UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THOMAS MCKEE,

                Plaintiff,

v.                                            Case No. 23-cv-184-pp

SGT. AULT and CO ROHDE,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3), DENYING AS MOOT PLAINTIFF'S SECOND MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 7) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Thomas McKee, who is incarcerated at Green Bay Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 3, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On February 27, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $32.85. Dkt. No. 5. The court received that fee on February 28, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay remainder of the filing fee over time in the manner explained at the end of this order.[1]

**II.    Screening the Complaint**

   A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include

---

[1] The plaintiff also has filed a second motion for leave to proceed without prepaying the filing fee. Dkt. No. 7. Because the court is granting the plaintiff's first motion, it deny the second motion as moot.

2

"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The plaintiff has sued Sergeant Ault and Officer Rhode, who work at Green Bay Correctional Institution. Dkt. No. 1 at 1. He alleges that on July 12, 2022, the defendants violated his rights under the Eighth Amendment to the United States Constitution. Id. at ¶12-19. Specifically, the plaintiff alleges that during his previous incarceration (2009 to 2017), he tried to harm himself and

3

commit suicide multiple times resulting in several trips to the emergency room, and that his Department of Corrections (DOC) and Psychological Services Unit (PSU) files contained this information. Id. at ¶7. He says that DOC policy provides that when an incarcerated individual expresses suicidal thought to an officer, the officer must, (1) call a shift supervisor ("white shirt"), and (2) call a PSU staff member. Id. at ¶8. The plaintiff alleges that the policy requires that once called, the PSU staff and/or the "white shirt" must go to the incarcerated individual's cell to determine if he needs to be placed on observation status for his safety. Id. at ¶9.

The plaintiff alleges that on July 12, 2022, he was confined in the "Treatment Center," a separate building at Green Bay that houses incarcerated individuals who are on quarantine, temporary lock up or who have almost completed their segregation time. Id. at ¶¶11-12. That day, he allegedly told Lieutenant Matushak (not a defendant) that he was having a difficult time coping, that at the time he felt safe and that he would tell staff if anything changed. Id. at ¶12. According to the plaintiff, Ault and Rohde were working in the Treatment Center on July 12, 2022. Id. at ¶13. The plaintiff states that at 2:30 p.m., he told Ault that he was having thoughts of harming himself or "doing something crazy" and he needed to talk to "PSU." Id. ¶14. Ault allegedly replied that he would contact PSU staff, but that that was all he could do. Id. The plaintiff alleges that at 3:30 p.m., he turned on his "Red Light" which is in every Treatment Center cell and which signals to officers that the incarcerated individual has a medical or psychological emergency. Id. at ¶15. The plaintiff

states that he repeated his suicidal thoughts to Ault and Rohde each time they did their rounds by telling them he needed to talk to PSU, that if he wasn't removed from his cell and placed on observation status he would hurt himself, that they knew his history and that he had plenty of pens. Id.

The plaintiff alleges that at 4:30 p.m., Rohde came to his cell and told him to lay down and that PSU staff were gone for the day, and then Rohde walked away. Id. at ¶16. The plaintiff states that Rohde and Ault failed to take reasonable steps to prevent the plaintiff from harming and/or killing himself, such as calling PSU staff before they left for the day or calling a white shirt/supervisor. Id. The plaintiff states that although his red light was visible each time the defendants did their rounds, they never stopped to ask him what his emergency was or to check on him. Id. at ¶17. He says that at 5:30 p.m., he mentally broke down and swallowed "a whole bunch of Tylenol and pens[.]" Id.

CO Wenzlaff allegedly started working at 6:00 p.m., and he went to the plaintiff's cell and discovered that the plaintiff had swallowed a bunch of Tylenol and pens. Id. at ¶18. The plaintiff states that Matushak then came to his cell and asked, "Why he didn't he have someone call me?" Id. The plaintiff alleges that he was transported to the emergency room and the items were removed. Id. ¶19. The plaintiff states that he filed an inmate complaint about the incident and the complaint examiner contacted the PSU staff member working that day, who said that there was no documentation that the defendants contacted PSU regarding the plaintiff on July 12, 2022. Id. at ¶¶20-21.

5

The plaintiff claims that the defendants knew there was a significant likelihood that he would harm himself and attempt suicide, but that they disregarded the risk in violation of the Eighth Amendment. Id. at ¶22. For relief, the plaintiff seeks compensatory and punitive damages. Id. at 5.

C.  Analysis

Failure to provide protection from suicide or self-harm constitutes an Eighth Amendment violation if deliberate indifference by prison officials to an incarcerated individual's welfare effectively condones the harm by allowing it to happen. Eagen v. Dempsey, 987 F.3d 667, 693-94 (7th Cir. 2021) (citations omitted). To state a claim under the Eighth Amendment, the plaintiff must allege: (1) "he presented an objectively serious medical need;" and (2) "a defendant [ ] responded [ ] with deliberate indifference, thereby resulting in some injury." Lord v. Beahm, 952 F.3d 902, 904 (7th Cir. 2020) (citing Petties v. Carter, 836 F.3d 722, 727-28 (7th Cir. 2016)). A medical condition is objectively serious if it is "so obvious that even a lay person would perceive the need for a doctor's attention." See Roe v. Elyea, 631 F.3d 843, 857 (7th Cir. 2011). "All agree that suicide is an objectively serious medical condition ... [and] prison officials cannot intentionally disregard a known risk that an inmate is suicidal." Lord, 952 F.3d at 904 (citing Lisle v. Welborn, 933 F.3d 705, 716 (7th Cir. 2019)). Regarding the second prong, a defendant responds with deliberate indifference when he or she "actually knew of and disregarded a substantial risk of harm." Petties, 836 F.3d at 728. "This requires 'more than mere or gross negligence, but less than purposeful infliction of harm.'" Lisle,

6

933 F.3d at 716-17 (quoting Matos v. O'Sullivan, 335 F.3d 553, 557 (7th Cir. 2003)).

The plaintiff has stated an Eighth Amendment claim against the defendants in their individual capacities based on his allegations that they knew he was suicidal but did not help him or notify other prison staff who could help him, and the plaintiff swallowed Tylenol and pens which required a visit to the emergency room, resulting in injury.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **DENIES AS MOOT** the plaintiff's second motion for leave to proceed without prepaying the filing fee. Dkt. No. 7.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Sgt. Ault and CO Rohde. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$317.15** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the

7

amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to Warden at Green Bay Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 13th day of June, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

9

Case 2:23-cv-00184-PP   Filed 06/13/23   Page 9 of 9   Document 11